# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL SLUGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-1553 |
| | ) | |
| METAMORA TELEPHONE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

# O R D E R  &  O P I N I O N

This matter is before the Court on Defendant Metamora Telephone Company's Motion for Summary Judgment. (Doc. 16). Plaintiff Michael Sluga brought a one-count Complaint under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, on November 21, 2013, alleging that Defendant discriminated against him on the basis of his disability when it terminated his employment. (Doc. 1). The motion is fully briefed and ready for decision. For the reasons discussed below, Defendant's motion is granted.

### SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365,

368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Plaintiff Michael Sluga previously worked for Defendant Metamora Telephone Company ("Metamora"). Metamora installs and maintains underground telephone, TV, and internet lines in and around Marseilles and Metamora, Illinois. In the Spring of 2013, after Sluga's employment had ended, Metamora signed a franchise agreement with Washington, Illinois and expanded its installation work.

Sluga was last employed by Metamora as an Outside Plant Supervisor. As part of that job, he was responsible for supervising outside crews that installed telephone, TV, and internet lines during the company's busy construction season, which runs from April until early winter every year. In addition to his supervision work, Sluga was also tasked with maintaining Metamora's machines and vehicles and inputting mapping data into Metamora's computer system.

---

[1] Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the parties' statements of facts and responses thereto. (Docs. 16, 23, and 26). The Court notes with displeasure that Plaintiff's statement of facts altogether fails to adhere to Central District of Illinois Local Rule 7.1(D)(2)(b). The Local Rule instructs a responding party that it must respond to a moving party's list of proposed undisputed material facts by listing in separate subsections the following: (1) which facts are undisputed material facts; (2) which facts are disputed material facts; (3) which facts are disputed immaterial facts; (4) which facts are undisputed immaterial facts; and (5) additional material facts. *See* C.D. Ill. Civ. R. 7.1(D)(2)(b). Plaintiff's response has broken up Defendant's proposed undisputed material facts into two categories: (A) undisputed facts and (B) disputed facts. (*See* Doc. 23 at 2-10). Rather than including additional material facts in a separate section, Plaintiff has included a laundry list of his own facts that accompany each disputed fact. (*See, e.g., id.* at 3-5 (listing eleven factual assertions, including Plaintiff's work history (at fact 7.j) and the fact that Defendant entered into an agreement with the City of Washington (at fact7.i) to dispute the fact that Defendant promoted Dale Matson into a position previously held by Plaintiff). In spite of Plaintiff's failure to comply with the Local Rule, the Court has considered the entirety of Plaintiff's Rule 56 statements of fact.

Plaintiff tore his rotator cuff (which he had also previously torn in 2006) on July 27, 2011 when he slipped on a trailer while at work and fell two feet to the ground. He worked from August 4, 2011 through February 14, 2012 with the injury. By December 1, 2011 it became clear that Plaintiff would need surgery. He informed Metamora that he would need to take a six month leave of absence for physical rehabilitation after the surgery. Plaintiff had rotator cuff surgery on February 15, 2012 in Chicago. At that time, he was placed on twelve weeks of job-protected Family and Medical Leave under the federal Family and Medical Leave Act from February 15 through May 16, 2012.

On May 20, 2012, after the expiration of Plaintiff's FMLA leave, Defendant promoted Dale Matson to Outside Work Supervisor, the position that Plaintiff held before he took his leave. Matson had previously worked as an outside crew member under Sluga's supervision. Matson testified that he received the outside plant supervisor's job and promotion because he had been doing the work of a supervisor in Plaintiff's absence. Also during Plaintiff's leave of absence, Defendant, through its president Glenn Rauh, hired Don Adams on August 6, 2012 to work on the outside crew doing line installation.

Plaintiff filed a workers' compensation claim for his July 27, 2011 injury and ultimately settled it. On July 27, 2012, Plaintiff's treating physician sent a report to Defendant's workers' compensation insurance company which stated that a decision on whether Plaintiff could return to work would be made in four weeks. Plaintiff's treating physician released him to return to work on August 29, 2012 with some work restrictions, and Plaintiff reported back to work on August 30, 2012.

Defendant did not put him back to work, and effectively terminated him at that point. Defendant, through its agents, told him that he could not return because it had no open jobs that he could fill at that time and did not anticipate having other jobs opening in the future. Defendant had filled Sluga's previous position by promoting Dale Matson in May of 2012, and it filled its open line installation position – which Sluga suggests he was qualified to fill – by hiring Don Adams in early August 2012. Sluga has not provided evidence that Defendant had any other open jobs available at the time that he wished to return, including mapping and data entry jobs.

## DISCUSSION

For purposes of the pending motion, Defendant concedes that Plaintiff is a person with a disability under the Americans with Disabilities Act ("ADA"). However, Defendant argues that it is entitled to summary judgment because the undisputed evidence demonstrates that Plaintiff is not a "qualified individual." This is a prerequisite to obtaining relief under the ADA. *See* 42 U.S.C. § 12112(a). Even if Plaintiff can show that he is a qualified individual under the ADA, Defendant argues that Plaintiff cannot produce evidence sufficient to state a *prima facie* case of discrimination on the basis of disability or evidence that its nondiscriminatory reason for terminating him is pretext for discrimination. Before reaching these issues, however, the Court must consider what to do with the Affidavit of Ann Dickerson, Defendant's corporate officer who is responsible for human resources matters.

## I. Dickerson's Affidavit

In support of its motion for summary judgment, Defendant submitted an affidavit made by one of its corporate officers, Ann Dickerson. (*See* Doc. 16-1). Plaintiff argues that the Court should strike it as a sham affidavit because certain parts of it purportedly contradict her deposition testimony. (*See* Doc. 23 at 10).

Courts should only consider affidavits that conflict with earlier deposition testimony in "a limited number of circumstances," such as when an affidavit clarifies ambiguous or confusing testimony or is based on newly discovered evidence. *See Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 520 (7th Cir. 1988). If an affidavit presented at the summary judgment stage does not contradict earlier testimony, it should not be stricken. *See Aviles v. Cornell Forge Co.*, 183 F.3d 598, 602-03 (7th Cir. 1999). Of course, any ambiguities emerging between the affidavit and the deposition should be construed in favor of the non-movant. *See id.*

In her affidavit, Dickerson avers that she "made the decision to fill Mr. Sluga's position by promoting [Dale] Matson in order to complete the remainder of the busy construction season with an Outside Plant Supervisor in place." (Doc. 16-1 at 3). Plaintiff argues that this statement is inconsistent with Dickerson's answers to questions during her deposition. When Plaintiff's attorney first asked her during her deposition who made the decision to promote Dale Matson, she replied, "I don't remember exactly." (Dickerson Dep., Doc. 21-4, at 34-35). Shortly thereafter, she testified that she knew about the promotion of Dale Matson on May 20, 2012 because she "was involved in that decision." (*Id.* at 36). She said she could not remember who else was involved. (*Id.*).

Dickerson's statement in her affidavit that she made the decision to fill Mr. Sluga's position by promoting Dale Matson is not inconsistent with her prior testimony. First, Dickerson's responses to the questions during her deposition are not inconsistent or contradictory. It is entirely plausible for her to not remember each person involved in a decision, and for her to also remember that she was involved in making a decision. With this understanding, her responses can be reconciled without conflict. Moreover, these statements are not inconsistent with the assertion made in her affidavit. Her affidavit does not preclude the possibility that others were also involved in deciding to promote Matson; it simply says that she made the decision to promote him.

Because Dickerson's affidavit does not contradict her deposition testimony, the Court will not strike it. *See Adelman-Tremblay*, 859 F.2d at 520; *Aviles*, 183 F.3d at 602-03. Moreover, Dickerson's affidavit contains additional factual assertions that Plaintiff's counsel did not cover with her during her deposition. For example, Plaintiff's counsel did not question Dickerson regarding any reasons that Defendant promoted Matson. To the extent that Plaintiff seeks to strike Dickerson's affidavit on account of this additional information, the Court concludes such a consequence would be inappropriate. *See Aviles*, 183 F.3d at 603 (refusing to hold counsel's failure to further explore area of questioning against a witness who later submitted an affidavit). Therefore, the Court will consider Ann Dickerson's affidavit, which was included with Defendant's motion for summary judgment.

## II. Plaintiff's Status as a Qualified Individual Under the ADA

With that cleared up, the Court can proceed to consider Plaintiff's ADA claim. Under the Americans with Disabilities Act, it is illegal for an employer to discriminate against an employee on the basis of disability. 42 U.S.C. § 12112(a). These claims tend to take two forms. An employee who claims that his employer treated him differently or less favorably than other employees states a disparate treatment claim under the ADA, while an employee who claims that his employer failed to reasonably accommodate his disability states a failure to accommodate claim. *See Bultemeyer v. Fort Wayne Cmty. Schools*, 100 F.3d 1281, 1283-84 (7th Cir. 1996). These types of claims are analyzed separately from each other, *id.*, but share the common element that a plaintiff must be a qualified individual, as defined by the ADA. *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (listing elements of a reasonable accommodation claim under the ADA); *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 489 (7th Cir. 2014) (listing elements of disparate treatment claim under the ADA through either the direct or indirect method of proof); *see also* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability . . . .").

The statute defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant's primary argument is that Plaintiff cannot seek protection under the ADA because his lengthy leave of absence (over six months) kept him from

performing the essential functions of his job and therefore removed him from the class of people protected by the ADA.

There is support for the argument that the need for a lengthy leave of absence from work disqualifies an individual from protection under the ADA. In *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003), the Seventh Circuit stated in categorical terms, that the "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." In *Byrne*, a company fired one of its engineers who was suffering from depression after it learned that he had been sleeping on the job. *See id.* at 380. After two months of treatment, the engineer attempted to return to work, but the company rebuffed him. *Id.* In his lawsuit, he argued that rather than terminating his employment, his employer should have provided him with a leave of absence. *See id.* at 380-81. The court dispatched with his argument rather quickly, concluding that short leaves of absence may be appropriate reasonable accommodations but extended leaves of absence take an employer out of the category of qualified individuals because "if one is not able to work, one cannot be a qualified individual." *Id.* at 381 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)). Subsequent cases have walked back any categorical rule – if one existed – and concluded that context matters. For example, some district courts have concluded that courts should employ a burden-shifting analysis and require that plaintiffs provide evidence of special circumstances in order to justify extended leave as an appropriate and reasonable accommodation. *See DeLon v. Eli Lilly & Co.*, 990 F. Supp. 2d 865, 873-

76 (S.D. Ind. 2013); *E.E.O.C. v. Midwest Independent Transmission Sys.*, No. 1:11-cv-1703, 2011 WL 2389856, at *4 (S.D. Ind. May 30, 2013).

Defendant's reliance on this line of cases is misplaced. Whether Plaintiff is a qualified individual must be determined "as of the time of the employment decision." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). So, in *Byrne*, the complained-of employment decision occurred when the employer fired the employee prior to his two-month rehabilitation. *See* 328 F.3d at 380. And in *DeLon*, the employer terminated its employee in June 2010, when it was clear that she "could not perform the essential functions of her job" without an extended leave of absence. *See* 990 F. Supp. 2d at 873. Here, however, Plaintiff began his extended leave of absence in February 2012 and Defendant promoted an employee to Plaintiff's position in May of 2012, but Defendant did not take its adverse employment action at either of those points. Indeed, Ann Dickerson testified that Plaintiff was not notified that he had been terminated prior to August 30, 2012. (*See* Dickerson Dep., 21-4, at 41).

The question, therefore, is whether Plaintiff has presented evidence that he was a qualified individual in August 2012, rather than whether Plaintiff was a qualified individual at the point when he initially requested leave or at the point at which Defendant filled his position in May of 2012. *See Weiler*, 101 F.3d at 524; *see also Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 461-62 (E.D. Pa. 2005) (determining whether employee who had previously been on a lengthy leave, and had her position filled during that absence, was a qualified individual at the point at which her employer terminated her employment altogether). Because Plaintiff's

doctor had cleared him to return to work at the point at which Defendant informed him that there was no position available for him, Defendant's argument that he was not a qualified individual fails.

### III.    Failure to Accommodate Plaintiff's Disability

The Seventh Circuit has been clear: a failure to accommodate claim is distinct from a disparate treatment claim, and that the two should be analyzed separately. *See Bultemeyer*, 100 F.3d at 1283 ("[T]his is not a disparate treatment claim, but a reasonable accommodation claim, and it must be analyzed differently."). This is why, in the usual course of litigation, a plaintiff with both reasonable accommodation and disparate treatment claims brings them separately. *See, e.g.*, *Powers v. USF Holland Inc.*, No. 12-CV-461, 2015 WL 1455209, at *5 (N.D. Ind. Mar. 30, 2015) (noting that the plaintiff brought four discrimination claims under the ADA, including a disparate treatment claim and a failure to accommodate claim); *Newell v. Alden Vill. Health Facility for Children and Young Adults*, 12 C 7185, 2014 WL 6757928, at *2 (N.D. Ill. Dec. 1, 2014) (noting that plaintiff brought six counts, including two viable and separate counts for disparate treatment and failure to accommodate under the ADA).

In this case, Plaintiff's Complaint has a single count. Although it is not entirely clear, Plaintiff seems to argue in his response brief that Defendant failed to accommodate his disability.  To state a failure to accommodate claim under the ADA, "a plaintiff must show that: (1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *Cloe*, 712 F.3d at 1176 (internal quotation

marks omitted). Ordinarily, "a plaintiff must . . . request an accommodation before liability under the ADA attaches." *Id*. The Seventh Circuit has also phrased the elements of a prima facie case for a reasonable accommodation claim as: "(1) [he]was or is disabled; (2) the defendant was aware of [his] disability; (3) [he] was otherwise qualified for [his] job; and (4) the disability caused the adverse employment action (a factor which is implied if not stated)." *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999).

In his brief, Plaintiff cites the elements from *Foster*, and also cites a second case – *Gile v. United Air Lines*, 95 F3d 492, 499 (7th Cir. 2007) – for the proposition that Defendant had an obligation to accommodate him by providing him with a vacant position. (*See* Doc. 23 at 11). Therefore, based on representations made in his brief, it seems that Plaintiff is arguing a failure to accommodate claim. This is strange, however, because Plaintiff also dedicates a large portion of his brief to arguing the matter of pretext. (*See id*. at 13-16). The issue of pretext and burden shifting – which, as will be discussed below, is pertinent to claims of disparate treatment – is "unnecessary and inappropriate" in reasonable accommodation claims. *See Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000).

So, what kind of claim did Plaintiff bring? In his Complaint, Plaintiff never suggests that Defendant should have provided him with a reasonable accommodation, or that defendant failed to accommodate him. (*See* Doc. 1 at 7-8). Rather, the Complaint alleges that Defendant "terminated [his] employment because he was a qualified individual with a disability." (*Id*. at 8). The allegations in the Complaint, which do not suggest that Defendant could have accommodated

Plaintiff by providing him with another job and similarly do not suggest that Plaintiff was incapable of doing his previous job once he returned from his leave of absence, fail to put Defendant on notice that the claim rests on reasonable accommodation grounds. *See Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005).

Here, where Plaintiff for the first time suggests that Defendant should have reasonably accommodated his disability, he is functionally amending his Complaint to include a failure to accommodate claim. Although plaintiffs need not "set forth specific facts and legal theories" in their complaints, a complaint is inadequate if it fails to fairly notify "a defendant of matters sought to be litigated." *See id.* (internal quotation marks omitted). Moreover, "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). For these reasons, the Court concludes that Plaintiff has waived his reasonable accommodation claim.

Even if Plaintiff had preserved his reasonable accommodation claim, it would fail based on the evidence presented. When an employee seeks a reassignment to a vacant position as a reasonable accommodation, as Plaintiff does here, it is the employee's burden to show that another position for which they qualified existed. *See Galvin-Stoeff v. St. John's Hosp.*, No. 11-3423, 2014 WL 4056695, at *10 (C.D. Ill. Aug. 15, 2014) (citing *Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 595 (7th Cir. 1999)). Plaintiff must show that a vacant position existed "at the time [he] was seeking to return to work." *See Pond*, 183 F.3d at 596. In this case, Plaintiff has not presented evidence that there was a job available at the time that he sought to

return to work. Because Plaintiff cannot create a genuine issue of material fact as to whether Plaintiff failed to reasonably accommodate him, Defendant would be entitled to summary judgment on Plaintiff's failure to accommodate claim had he not already waived it.

### IV. Disparate Treatment

Next, the Court must consider whether Plaintiff has presented sufficient evidence to survive summary judgment on a disparate treatment claim. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of [his] disability . . ." 42 U.S.C. § 12112. As mentioned above, employees can prove that their employer discriminated against them because of their disability through two methods of proof: the direct method of proof and the indirect method of proof. *Taylor-Novotny*, 772 F.3d at 488. Again, it is unclear what method Plaintiff intends to rely upon to prove disparate treatment. Therefore, the Court will consider Plaintiff's evidence under both methods.

### a. Direct Method of Proof

Under the direct method of proof, a plaintiff proves his case by presenting either direct or circumstantial evidence of discrimination on the basis of disability. *See Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Because it is rare that an employer would reveal discrimination through overt remarks, Plaintiffs may prove a claim through the production of circumstantial evidence "that allows a jury to infer intentional discrimination." *Id.* Among the types of circumstantial evidence that courts consider under the direct method of proof is evidence that a purported reason for an adverse employment

action is pretext for discrimination. *Id.* To the extent that Plaintiff is relying upon the direct method of proof, his argument hinges on whether Defendant's proffered reason – that there were no available job for Plaintiff – is pretext. (*See* Doc. 23 at 13-15). Plaintiff suggests a jury might not believe this explanation.

A plaintiff "may show pretext by presenting evidence 'tending to prove that the employer's proffered reasons are factually baseless . . ." *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002). Put another way, "[a] plaintiff can establish pretext by showing . . . that the employer's explanation is unworthy of credence." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997). Here, where Plaintiff argues Defendant's proffered reason is unworthy of credence, or otherwise not believable, he must present evidence that Defendant did not honestly believe that there were no positions available when it terminated him. *See Perry v. Bath & Body Works, LLC*, 993 F. Supp. 2d 883, 907 (N.D. Ind. 2014); *Kodl v. Bd. of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007).

In his response, Plaintiff has not cited to any evidence that tends to show that Defendant did not honestly believe its explanation that no positions were available, and he has not produced evidence that contradicts or undermines Defendant's explanation that no jobs were available. *See Carroll v. Lynch*, 698 F.3d 561, 566 (7th Cir. 2012).

First, Plaintiff argues that at the time Defendant terminated him, it expected significant additional future business, which materialized in 2013 and 2014. (*See* Doc. 23 at 15 (discussing Defendant's acquisition of a franchise business in the City of Washington)). However, the existence of future business and future hiring needs

that materialized approximately seven months after Plaintiff sought to return to work is immaterial as to whether positions existed at the time that Plaintiff sought to return to work. Therefore, this evidence does nothing to contradict Defendant's non-discriminatory reason.

Plaintiff also points to statements made by his former supervisor, James Springer. (*Id.*). While Plaintiff was on leave after his surgery, Springer told Glenn Rauh, Defendant's President, that he thought Defendant could "bring Mike back if he could to help us get our mapping done." (Springer Dep., Doc. 20-2, at 47-49). This suggestion, however, also does not contradict Defendant's assertion that there were no positions available at the time that he sought to return to work. As Plaintiff submitted, data input that was associated with mapping was part of his job prior to his surgery leave. (*See* Doc. 23 at 3). Furthermore, in Defendant's absence two other employees did the mapping work that Plaintiff had done. (*See id.*; Springer Dep., Doc. 20-2, at 46). Thus, although Plaintiff's supervisor might have suggested that he was capable of doing mapping work and that he should do mapping work in the event that he could not return to do work with installation crews, (Springer Dep., Doc. 20-2, at 48-49), this evidence does not contradict Defendant's claim that no jobs were available at the time Plaintiff sought to return to work. At most, it suggests that Defendant could have repurposed other employees in order to create a position that Plaintiff could do. Defendant was under no obligation to take this step. *See McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997) (explaining, in the context of a failure to accommodate claim, that "[a]n employer is not obligated to 'bump' another employee in order to create a vacancy for the

disabled employee," and "the employer does not have to create a new position for the disabled employee.").

Finally, Plaintiff suggests that a jury could disbelieve Ann Dickerson's stated explanation based upon her lack of knowledge during her deposition with respect to other corporate affairs. In rare cases, a credibility determination with respect to the issue of pretext might be enough to survive summary judgment. For example, in *Fischer v. Avanade, Inc.*, 519 F.3d 393, 407 (7th Cir. 2008), the Seventh Circuit concluded that a "late justification for [an adverse employment action], provided at the eleventh hour in conjunction with Defendant's motion for summary judgment, raises a genuine issue of material fact as to whether this justification is a later fabrication on Defendant's part." That is not the case here. Defendant's reason for terminating Plaintiff has remained consistent since the day that Defendant made the decision. In Plaintiff's Complaint, he alleges that Dickerson called him and "stated Metamora Telephone did not have any work for [him], as his position had already been filled." (Doc. 1 at 6-7). Throughout her deposition, Dickerson repeatedly provided the same justification. (*See, e.g.,* Dickerson Dep., Doc. 21-4, at 39 ("Q. Do you know when you ultimately made any decision not to allow Mike Sluga to return to work? A. When he brought this in, there wasn't a job available."). As the Seventh Circuit has explained, a plaintiff cannot establish pretext if "his only 'evidence' had been that defendants' witnesses were not worthy of belief." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (internal quotation marks omitted). Such cases are no-evidence cases, "and such a case a plaintiff must lose, because he has the burden of proof." *Id.* Instead of "relying on the hope that

the jury will not trust the credibility of the witnesses," Plaintiff "must offer substantial evidence to support the argument." *See id.*

None of the evidence presented by Plaintiff supports the argument that Defendant's decision was pretextual. Because Plaintiff has not presented any other evidence under the direct method of proving an ADA violation, Plaintiff's claim cannot proceed under this theory.

### b. Indirect Method of Proof

The second way that Plaintiff can prove a disparate treatment case is through the indirect method of proof. Under the indirect method, an employee must establish a *prima facie* case by showing that (1) he was a qualified individual with a disability, (2) he was meeting his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other similarly situated employees who did not have a disability were treated more favorably. *See Taylor-Novotny*, 772 F.3d at 489. The last element may also be satisfied by other "circumstances [that] suggest that the plaintiff's disability was the reason the employer took [the] adverse action." *Id.* at 489 n. 45. If an employee establishes a *prima facie* case, the burden shifts to the employer, who "must identify a legitimate, non-discriminatory reason for its employment decision." *Dickerson*, 657 F.3d at 601. Should the employer provide the reason, the burden shifts back to the employee, who must present evidence that the employer's reasons are pretextual. *Id.*

Defendant argues in its motion that it is entitled to summary judgment because Plaintiff cannot establish the second and fourth elements of the required *prima facie* case. Plaintiff, in his brief, breezes through the elements of the *prima*

*facie* case as articulated in *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999). (*See* Doc. 23 at 11-13). As stated earlier, the elements in *Foster*, which are appropriate for a reasonable accommodation case, are: (1) the employee is disabled; (2) the employer is aware of the disability; (3) the employee is otherwise qualified for the job; and (4) the disability caused the adverse employment action. (*See id.* at 11).

The Court concludes that Plaintiff has not presented evidence sufficient to sustain a *prima facie* case under the indirect method of proof. Assuming that Plaintiff has shown that he was meeting his employer's legitimate expectations, he has not presented evidence that he was discriminated against because of his disability. The burden-shifting mechanism in the indirect method of proof, in which an employee shows that other similarly situated employees were treated more favorably than he was and shows that the purported reasons for an adverse employment action were pretextual, is a manner in which a plaintiff can prove what the fourth element from *Foster* gets at: that the adverse employment action occurred *because of the plaintiff's disability*. *See Dickerson*, 657 F.3d at 601. Yet, when Plaintiff addresses the fourth element from *Foster* in his brief, he simply says: "the fourth element on adverse employment action is present because plaintiff was not allowed to return to work." (Doc. 23 at 13).

This argument suggests that plaintiffs can prove disability discrimination by simply showing that they are disabled and showing that they suffered an adverse employment action, two things that Defendant has conceded for the purpose of this motion. It entirely reads out of the test any obligation that a plaintiff present

evidence of causation that links those two things together. Causation, of course, is required by the statute, *see* 42 U.S.C. § 12112 (requiring that discrimination occur "on the basis of disability."), and it is an element under both the *prima facie* standard as correctly cited by Defendant and as incorrectly cited by Plaintiff. *See Taylor-Novotny*, 772 F.3d at 489; *Foster*, 168 F.3d at 1032.

By jumping straight to an argument regarding pretext without presenting evidence or argument suggesting a nexus between his disability and the adverse employment action, Plaintiff has failed to present evidence where he has the clear burden to do so. *See Taylor-Novotny*, 772 F.3d at 489. The conventional way of doing so would have been for Plaintiff to argue that other of Defendant's employees, including Dale Matson or Don Adams, were similarly situated to him. *See id.* He has not done that, or made any other attempt to show causation.

It is possible that the record provides some basis through which Plaintiff could have made a more thorough attempt at a *prima facie* case than he did. His failure to make that argument, however, is a forfeiture of the argument. *See Merry Gentleman, LLC v. George and Leona Prods., Inc.*, 13 C 2690, 2014 WL 7330911, at *7 (N.D. Ill. Dec. 22, 2014); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted).

Because Plaintiff has not presented evidence that other similarly situated employees without a disability were treated more favorably than he was, or presented any other evidence that Defendant discriminated against him because of his disability, he has failed to state a *prima facie* case under the indirect method of proof. Therefore summary judgment for Defendant is appropriate.

## CONCLUSION

Plaintiff has failed to present genuine issues of disputed material fact sufficient to sustain his claim for disparate treatment based on disability under the ADA under both the direct and indirect methods of proof. Moreover, Plaintiff cannot amend his Complaint through his response brief to include a reasonable accommodation claim under the ADA. Even if he did, such a claim would fail as well.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 16) is GRANTED.

CASE TERMINATED.


Entered this 17th day of April, 2015.


                                              s/Joe B. McDade
                                         JOE BILLY McDADE
                                 United States Senior District Judge